AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>A Black Apple iPhone, model unknown and serial number unknown. | Case No. 23-8164 MB<br><br>(Filed Under Seal) |

## SEARCH WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before __4/27/23__ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __4-13-23 4:32pm__   _____
*Judge's signature*

City and state: <u>Phoenix, Arizona</u>   <u>Honorable John Z. Boyle, U.S. Magistrate Judge</u>
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Black Apple iPhone model unknown and serial number unknown, (hereafter the "SUBJECT CELLULAR TELEPHONE") The SUBJECT CELLULAR TELEPHONE is currently held at the DEA Phoenix Field Division property and evidence storage facility located at 3439 East University Drive, Phoenix, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>A Black Apple iPhone, model unknown and serial number unknown. | Case No. 23-8164mb<br><br>(Filed Under Seal) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 843(b) | Use of a Communication Facility to Commit a Federal Drug Felony |

The application is based on these facts:

**See attached Affidavit of Special Agent Marco Paddy**

☒ Continued on the attached sheet.
☐ Delayed notice of  30  days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA RYAN GOLDSTEIN

*Marco A. Paddy Jr*
Applicant's Signature

Digitally signed by RYAN GOLDSTEIN
Date: 2023.04.13 16:04:14 -07'00'

Marco Paddy, DEA
Printed name and title

Sworn to telephonically and signed electronically.

Date: 4-13-23  4:32p

Judge's signature

City and state: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Black Apple iPhone model unknown and serial number unknown, (hereafter the "SUBJECT CELLULAR TELEPHONE") The SUBJECT CELLULAR TELEPHONE is currently held at the DEA Phoenix Field Division property and evidence storage facility located at 3439 East University Drive, Phoenix, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Marco Paddy, being first duly sworn, hereby deposes and states as follows:

### I.  INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A (the "SUBJECT CELLULAR TELEPHONE"), and to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations described below.

2. I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been since September 2018. In September 2018, your Affiant attended DEA Basic Agent Training for 17 weeks in Quantico, Virginia. The training your Affiant received consisted of several hundred combined hours of instruction in the following subjects: legal instruction, drug identification, evidence handling, report writing, confidential source management, undercover operations, defensive tactics/firearms, and interview/interrogation. Since becoming a Special Agent, your Affiant has worked in the investigation of Title 21 violations and related crimes.

3. By virtue of my employment as a Special Agent, your Affiant has performed various tasks, including:

   a. Functioning as a surveillance agent, thus observing and recording movements of persons trafficking in illegal drugs and those suspected of drug trafficking;

   b. Interviewing witnesses, confidential sources, and sources of information relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments); and

   c. Functioning as a case agent, entailing the supervision of investigations involving drug trafficking and money laundering.

4. Prior to employment with the DEA, your Affiant was employed as a Border Patrol Agent for the United States for approximately ten years. Your Affiant successfully completed the 12-week Border Patrol Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. While employed as a Border Patrol Agent, your Affiant was assigned to the Maricopa County Drug Suppression Task Force/High Intensity Drug Trafficking Area (HIDTA) for approximately two years. Your Affiant has attended multiple trainings and classes regarding various subjects, including drug identification, drug interdiction, clandestine drug laboratory investigation and intelligence gathering.

5. During your Affiant's employment with Border Patrol and as a member of the Maricopa County Drug Suppression Task Force, your Affiant conducted investigations into illegal drug distribution, and participated in the drafting and execution of search warrants for evidence of drug-related offenses. Your Affiant has also cultivated and handled several Confidential Sources, leading to drug seizures and arrests.

6. As a DEA Special Agent, your Affiant has also participated in wiretap investigations by reading line sheets, monitoring live calls, or having live calls interpreted, and responding to actionable intelligence gained from intercepted communications.

7. In addition to your Affiant's training and experience discussed above, during your Affiant's employment as a Special Agent with the DEA and a Border Patrol Agent, your Affiant has participated in investigations involving cocaine, heroin, methamphetamine, synthetic drugs, and prescription drugs, which have resulted in the seizure of illegal drugs and drug-related evidence. While conducting drug investigations, your Affiant has personally interviewed informants and persons involved in the distribution of illegal drugs and the movement of proceeds from illegal drugs. Your Affiant has consulted with other experienced investigators concerning the practices of drug traffickers/money launderers and the best methods of investigating them. In preparing this affidavit, your Affiant has conferred with other Special Agents and law enforcement officers, who share the opinions and conclusions stated herein. Furthermore, your Affiant

has personal knowledge of the following facts or has learned them from the individuals mentioned herein.

8. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers.

9. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.   BASIS FOR PROBABLE CAUSE

10. On March 1, 2023, Special Agents with the Drug Enforcement Administration established physical surveillance at a residence on 36th Avenue in Phoenix, Arizona (36th Avenue Residence) in anticipation for the execution of a federal search warrant.

11. On March 1, 2023, at approximately 11:23 a.m., Gerardo SOTO-BELTRAN, exited the 36th Avenue Residence carrying a white plastic bag. Subsequently agents observed SOTO-BELTRAN enter into the driver's seat of a 2006 gold Toyota Camry, bearing Arizona license plate ZBA1YL, registered to Milton Alan Beltran-Felix at a different address in Phoenix, Arizona (Toyota Camry). Moments later, agents observed the Toyota Camry depart the residence and surveillance units followed the vehicle away.

12. Agents followed the Toyota Camry to a McDonalds parking lot located within close proximity of the residence. At the McDonalds parking lot, agents maintained physical surveillance of the vehicle as it circled the parking lot. Moments later, agents observed the Toyota Camry park next to a charcoal gray Honda Accord bearing Arizona License plate 90A07L, registered to Felipe Cazares-Verdugo, at an address in Tolleson, Arizona. Agents observed SOTO-BELTRAN lower his passenger door window and then

the driver of the Honda Accord lowered his driver door window and both individuals appeared to engage in a brief conversation. The driver of the Honda Accord was later identified as Hector CENICEROS-SAINZ.

13. Shortly thereafter, both individuals raised their vehicle windows. SOTO-BELTRAN then exited the driver's seat of the Toyota Camry carrying a white plastic bag. SOTO-BELTRAN then entered the front passenger seat of the Honda Accord. Seconds later, agents observed SOTO-BELTRAN exit the front passenger seat of the Honda Accord and return to the Toyota Camry without the white bag. At this time, agents approached both vehicles and contacted SOTO-BELTRAN and CENICEROS-SAINZ. A probable cause search of CENICEROS-SAINZ vehicle resulted in the seizure of two bundles of a white powdery substance weighing approximately 1.24 kilograms combined. A field test was conducted on one of the bundles found in the Honda Accord, which indicated that this bundle contained methamphetamine. The two bundles were found inside a white plastic bag located in rear passenger seat floorboard. The white plastic bag resembled the same plastic bag SOTO-BELTRAN carried into the CENICEROS-SAINZ's Honda Accord. Agents seized the SUBJECT CELLULAR TELEPHONE which was found on CENICEROS-SAINZ's person during the encounter.

14. In a post-Miranda interview, SOTO-BELTRAN admitted to distributing methamphetamine and stated that he was directed to deliver two bundles of methamphetamine to CENICEROS-SAINZ. In addition, SOTO-BELTRAN admitted to purposely breaking his cellphones during the encounter with agents. According to SOTO-BELTRAN he was advised to smash/break his cellphones if he was encountered and facing an arrest with law enforcement. Based on your Affiant training and experience drug trafficker utilize cellphones as a way to communicate with other drug traffickers and or drug customers. It is common for drug traffickers to smash and or break their cellphones during an arrest, because these cellphones hold information that might incriminate the drug trafficker and/or conspirators.

15. Furthermore, SOTO-BELTRAN stated that he received approximately $1200.00 US dollars from CENICEROS-SAINZ in exchange for the two pounds of methamphetamine. SOTO-BELTRAN stated that he had a pistol and additional narcotics located inside his residence.

16. An agent read CENICEROS-SAINZ his Miranda rights to which he stated he understood them and decided to remain silent. During the encounter with CENICEROS-SAINZ, agents located the SUBJECT CELLULAR TELEPHONE on his person. The SUBJECT CELLULAR TELEPHONE was seized by agents for evidentiary purposes.

17. At approximately 12:48 p.m., the United States Magistrate Judge Deborah M. Fine signed a federal residential search warrant (23-5065MB), authorizing the search of the 36th Avenue Residence.

18. At approximately 1:15 p.m., DEA agents executed federal search warrant 23-5065MB at the 36th Avenue Residence. A search of the property resulted in the seizure of approximate 130,000 (blue) suspected counterfeit oxycodone pills containing fentanyl, weighing 13.089 kilograms; approximately 10,000 (multi-colored) suspected counterfeit oxycodone pills containing fentanyl, weighing 1.209 kilograms; approximately 11.403 kilograms of a white powdery substance, which the laboratory confirmed contains methamphetamine; approximately 107.4 grams of a white powdery substance, which the laboratory confirmed contains cocaine; and a hi-point C9 9-millimeter handgun fully load on SOTO-BELTRAN's bed.

19. The SUBJECT CELLUALR TELEPHONE is currently held at the DEA Phoenix Field Division property and evidence storage facility located at 3439 East University Drive, Phoenix, Arizona. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of the DEA.

20. Based on your Affiant's training and experience and knowledge of the case, your Affiant believes the SUBJECT CELLULAR TELEPHONE contains communications and other evidence of drug trafficking.

### III. ITEMS TO BE SEIZED

21. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

    a. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows that drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking and money laundering activities. Therefore, evidence related to drug trafficking activity and money laundering activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

22. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

### IV. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

23. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

24. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

 a. Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

 b. Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

 c. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later

using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

      d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

      a.      Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.      As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while

executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.    A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

      d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw

an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. CONCLUSION

28. Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), are likely

to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

*Marco A. Paddy Jr*
Special Agent Marco Paddy
Drug Enforcement Administration

Subscribed electronically and sworn to telephonically on this 13+ day of April, 2023.

HONORABLE JOHN Z. BOYLE
United States Magistrate Judge